United States District Court
Southern District of Texas

**ENTERED**

February 16, 2017

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURA  COVINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-03300 |
| | § | |
| JEFFERY  COVINGTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending in the above-referenced cause are Plaintiff Laura Covington's ("Laura" or "Plaintiff") Motion for Reconsideration of the Court's Order Dismissing her Claims against Defendants Barham and Covington ("Motion for Reconsideration"), Doc. 96, Defendant City of Madisonville, Texas's ("City") Motion to Dismiss Plaintiff's Claims ("Second Motion to Dismiss"), Doc. 103, and Plaintiff's Motion to Strike and Motion for Leave to File a Sur-Rely to Defendant City's Reply to Plaintiff's Response to Their Motion to Dismiss ("Motion to Strike and for Leave to File Sur-Reply"), Doc. 108. Having considered the motions, responses, replies, relevant law, and for the reasons outline below, the Court concludes that Plaintiff's Motion for Reconsideration is moot, Defendant's Motion to Dismiss should be granted, and Plaintiff's Motion to Strike and for Leave to File Sur-Reply should be granted in part and denied in part.

### I.  Background

This case arises out of an acrimonious custody dispute between Plaintiff and her ex-husband, Jeffrey Covington ("Covington"). *See* Doc. 98. Covington was a police officer for the City of Madisonville at the time the events at the heart of this dispute took place. *Id.* at ¶ 12. Plaintiff and Covington's seven-year, off-and-on relationship produced two children. *Id.* ¶¶ 1, 6, 23. After their second marriage ended, Plaintiff alleges that Covington's desire to wrest custody

of their two small children from her caused him to fabricate evidence and conspire with Defendant Justin Barham ("Barham"), Defendant Jeremy Kidd ("Kidd"), and others to have Plaintiff arrested and charged with felony drug possession. *See* Doc. 98. Covington's plan eventually succeeded and Plaintiff's children were removed from her possession for two months until a hair follicle test indicated that there were no drugs in her system. *Id.* ¶¶ 118–119,128. Eventually, the District Attorney dropped all charges against her. *Id.* ¶ 276.

Soon after Plaintiff's arrest, the officer who had arrested Plaintiff came forward with his suspicions that Plaintiff's arrest had been orchestrated by Covington. *Id.* ¶¶ 131–137. An investigation into Covington's culpability began, ending with his arrest and indictment on charges of official oppression, delivery of a controlled substance, and obstruction or retaliation. *Id.* ¶¶ 138–165, 277–278. Ultimately, he was only convicted of the retaliation charge. *Id.* ¶ 287.

After Covington's indictment but before his conviction, Plaintiff filed suit in this Court, alleging that Covington violated § 1983 by acting under color of state law and conspiring with other municipal officials in securing Plaintiff's false arrest. *See* Doc. 1. Plaintiff further alleges that the City was aware of, but "intentionally disregarded, ratified, protected, and directly allowed," Covington's actions. Doc. 98 at ¶ 408. Plaintiff also alleges that the City is liable because it demonstrated deliberate indifference to Plaintiff's constitutional rights by failing to supervise its officers and wrongfully hiring Covington. *Id.* ¶¶ 401–411.

In an Opinion and Order dated September 4, 2015, this Court granted the City's First Motion to Dismiss but allowed Plaintiff twenty days to amend her pleading to file a pleading that satisfies the requirements to state a claim against the City under § 1983. Doc. 91. On the deadline, September 24, 2015, Plaintiff filed her Opposed Motion for Extension of Time to Amend her Complaint and Move for Entry of Default or Supplement her Pleadings in

Accordance with this Court's Opinion and Order. Doc. 92. On October 1 and 2, 2015, Plaintiff then filed her Second and Third Motions for Extension of Time to Amend. Docs. 94, 95. This Court referred these motions to Magistrate Judge Stacy, Docs. 93, 101, and on October 19, 2015, Judge Stacy granted Plaintiff's Motion for Extension of Time, deeming Plaintiff's Second Amended Complaint timely. Doc. 102. Meanwhile, Plaintiff also filed a Motion for Reconsideration of the Court's earlier Opinion and Order. Doc. 96.

In her Second Amended Complaint, Plaintiff asserts claims against (1) Covington personally for (a) violation of her Fourth and Fourteenth Amendment rights and conspiracy to deprive her of these rights; (b) for supervisory liability for violation of her Fourth and Fourteenth Amendment rights and conspiracy to deprive her of these rights; (2) Barham personally for violation of her Fourth and Fourteenth Amendment rights and conspiracy to deprive her of these rights; (3) Kidd personally for (a) violation of her Fourth and Fourteenth Amendment rights and conspiracy to deprive her of these rights; (b) malicious prosecution; (c) assault; (d) intentional infliction of emotional distress; and (4) the City for (a) failure to adequately supervise; and (b) negligence in hiring.[1] Doc. 98 at ¶¶ 355–411.

---

[1] Plaintiff again labels her hiring claims as "negligent-hiring" claims. As this Court admonished in its previous Opinion and Order, such claims are not cognizable under § 1983:

> Laura Covington claims that the City is liable for "negligent hiring" and inadequate police training and supervision. # 72 at p. 19. "Negligent training will not support a § 1983 claim against a municipality, nor is it sufficient to show that 'injury of accident could have been avoided if an officer had better or more training'" because the statute requires that for liability "for the failure to take precautions to prevent harm must be an intentional choice and not merely a negligent oversight." *Boston v. Harris County, Texas*, No. Civ. A. H–11–1566, 2014 WL 1275921, at *90 (S.D. Tex. March 26, 2014), citing *City of Canton*, 489 U.S. at 390. For the same reason it would be true of a claim for negligent hiring. The Court will presume that Covington's use of "negligent" was in error.

In response, on November 2, 2015, the City filed its current Motion to Dismiss Plaintiff's Claims. Doc. 103. Plaintiff responded, the City replied, and Plaintiff then filed her Motion to Strike and for Leave to file Sur-Reply. Doc. 108. All of the pending motions are now ripe for adjudication.

## II.  Plaintiff's Motion for Reconsideration

Plaintiff urges this Court to reconsider its Opinion and Order of September 4, 2015, Doc. 91, which dismissed her official-capacity claims against Defendants Barham and Covington on the ground that they were duplicative of her claims against the City. Doc. 96. She argues that she did not sue Barham and Covington in their official government capacities, but "personally for their personal, direct and gross violation of her constitutional rights under color of state law." *Id.* ¶ 5. She continues that, because she has pled specific facts demonstrating that the defendants were personally involved in the matters that form the basis for her § 1982 claims, "[t]his is not a case in which a government official or agency head is sued in name as an official for the governmental entity." *Id.* ¶ 8. Accordingly, she asks the Court to allow her to replead claims against Barham and Covington defendants personally. *Id.* ¶¶ 5, 13. Plaintiff also claims that she asserts valid claims against Barham and Covington for conspiracy to deprive her of her constitutionally protected rights and supervisory liability against Covington. *Id.* ¶¶ 9–10. The City does not respond to Plaintiff's motion.

Plaintiff misreads this Court's earlier Opinion and Order. In that directive, this Court granted the City's First Motion to Dismiss, but gave Plaintiff 20 days to file an amended pleading that satisfies the requirements to state a claim against the City under § 1983 and either

---

*Covington*, 2015 WL 5178078, at *10. This Court will afford Plaintiff the benefit of the doubt yet again and assume that her failure to relabel her "negligent hiring" claims is simply the result of sloppy draftsmanship.

an entry of default, voluntary dismissal, or amended pleading adequately stating state-law tort claims against Kidd in his individual capacity. *See Covington v. Covington*, CIV.A. H-13-3300, 2015 WL 5178078, at *18 (S.D. Tex. Sept. 4, 2015), *abrogated on other grounds by Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016). No mention was made of granting leave to amend her pleadings to state claims against Barham and Covington individually because none was necessary. The Court recognized that Plaintiff was suing both of these defendants in their individual and official capacities. *Id.* at *1 (stating that Covington and Barnham "have been sued in their individual and official capacities."). However, the Court never addressed the merits of Plaintiff's individual-capacity claims against Covington or Barham because it was only ruling on the City's motion to dismiss—which only addressed claims that implicated the City. *See id.* at *13 ("[B]ecause the claims against Kidd in his individual capacity do not involve the City nor implicate its liability, they are not relevant to the City's motion to dismiss."). Accordingly, the Court only dismissed Plaintiff's official-capacity claims against Barham and Covington. *Id.* at *17 ("Because Laura Covington's claims against Jeffrey Covington and Barham *in their official capacities* are in actuality claims against the City, these claims against Jeffrey Covington and Barham in their official capacities are also DISMISSED as duplicative." (emphasis added)).

The Court declines to address the sufficiency of Plaintiff's individual-capacity claims at this time. None of those claims were addressed in the City's First Motion to Dismiss—or dismissed by this Court. Nor is there a pending motion to dismiss directed at these claims. Moreover, in its prior Opinion and Order, this Court granted Plaintiff an opportunity to amend her claims. *Id.* at *18. Plaintiff took advantage of this opportunity and submitted her Second Amended Complaint. Doc. 98. Because Plaintiff's individual-capacity claims were never dismissed and she has had an opportunity to clarify and supplement those claims in her Second

Amended Complaint, Plaintiff's request to replead is moot.

### III. The City's Motion to Dismiss

In its Second Motion to Dismiss, the City argues that Plaintiff's claims against it must be dismissed because she brings no cognizable Fourteenth Amendment claims, her official-capacity claims against individual defendants and her claims against the police department are duplicative of her claims against the City, and there are no factual allegations that the City caused any deprivation of Plaintiff's rights or was deliberately indifferent. Doc. 103 at ¶¶ 1–6. The Court will address each of the City's arguments in turn.

#### a.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows the court to dismiss a claim that fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded facts in the complaint, and must view the allegations as a whole in the light most favorable to the non-movant. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555–57 (2007) (internal citations and quotation marks omitted). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.

Facial plausibility is satisfied when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Although "the plausibility standard is not akin to a 'probability requirement,'" there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to "draw on its judicial experience and common sense." *Id.* at 664–65.

### b.  Analysis

#### i.  *Fourteenth Amendment claims*

Plaintiff brings her claims against Defendants for violations of her Fourth Amendment right to be free from unlawful arrest, and her Fourteenth Amendment due-process rights not to have evidence fabricated against her and to maintain her family's integrity. Doc. 98 at ¶¶ 355–411. The City seeks dismissal of Plaintiff's Fourteenth Amendment claims on the ground that claims of unlawful arrest or detention are cognizable under the Fourth, not the Fourteenth Amendment. Doc. 103 at ¶ 10. The City further argues that Plaintiff "states no plausible allegations asserting a claim under the Fourteenth Amendment." *Id.* Plaintiff responds by citing a number of cases indicating that the Fifth Circuit recognizes that the due-process clause protects an individual's right to family integrity and not to have police deliberately fabricate evidence against them. Doc. 106 at 4–6.

There is no question that the right to "family integrity" is an acknowledged constitutional

right—"a form of liberty guaranteed by the due process clause of the Fourteenth Amendment." *Morris v. Dearborne*, 181 F.3d 657, 667 (5th Cir. 1999) (citing *Stanley v. Illinois*, 405 U.S. 645 (1972)). The Constitution protects family relationships and a parent's right to the care, custody, control, and management of their children is well-established. The most essential basic aspect of familial privacy is "the right of the family to remain together without the coercive interference of the awesome power of the State." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 921 (5th Cir. 2000) (citing *Hodorowski v. Ray*, 844 F.2d 1210, 1216 (5th Cir. 1988)). Likewise, "individuals have a due process right 'not to have police deliberately fabricate evidence and use it to frame and bring false charges against [them].'" *Robles v. Aransas Cnty. Sheriff's Dep't*, 2:15-CV-495, 2016 WL 4159752, at *7 (S.D. Tex. Aug. 5, 2016) (quoting *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015)). To make a claim for deliberate fabrication, Plaintiff need not allege that fabricated evidence was used against her at trial, but only that it led to false charges being brought against her. *Cain v. Johnson*, A-16-CV-30-LY, 2016 WL 4146196, at *4 (W.D. Tex. Aug. 3, 2016) (citing *Cole*, 802 F.3d at 771).

In her Second Amended Complaint, Plaintiff alleges that drug charges were falsely brought against her because Covington, Barham, and Kidd conspired to have her arrested and deliberately planted evidence to that end. Doc. 1 at ¶¶ 38–57, 115. Further, Plaintiff alleges that her children were removed from her custody as a result of the false charges. *Id.* at ¶¶ 118–119. These are adequate allegations of Fourteenth Amendment violations. Nevertheless, as discussed below, her claims against the City fail for other reasons.

### ii. *Official-capacity claims*

Notwithstanding the fact that Plaintiff's Second Amended Complaint and her Response explicitly state that she is suing Barham, Covington, and Kidd in their personal capacities only,

Docs. 98 at ¶¶ 355–397, 106 at 2–3, the City interprets Plaintiff's claims against these individuals as official-capacity claims and seeks dismissal, Doc. 103 at ¶¶ 11–12.

"Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). "Personal-capacity suits seek to impose liability on a government official as an individual, while official-capacity suits 'generally represent another way of pleading an action against an entity of which the official is an agent.'" *Id.* (citing *Monell v. Dept. of Soc. Serv's.*, 436 U.S. 658, 690 n.55 (1978)). Because the real party in interest in official-capacity suits is the governmental entity and not the named official, any claims against individual employees in their official capacities are duplicative of the claims against the governmental entity and must be dismissed, *Covington*, 2015 WL 5178078, at *11 (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985)).

When "it is not clear from allegations of the complaint whether a defendant has been sued in his official or individual capacity, the court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued." *Senu-Oke v. Jackson State Univ.*, 521 F. Supp. 2d 551, 556 (S.D. Miss. 2007), *aff'd*, 283 Fed. App'x 236 (5th Cir. 2008) (citing *Forside v. Mississippi State Univ.*, 2002 WL 31992181, *5 n.5 (N.D. Miss. 2002)). "To state personal-capacity claims under § 1983 plaintiffs must allege that while acting under color of state law defendants were personally involved in the deprivation of a right secured by the laws or Constitution of the United States, or that the defendants' wrongful actions were causally connected to such a deprivation." *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1003 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep.*

*Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015) (citing *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

Here, Plaintiff has repeatedly stated that she is not asserting official-capacity claims. Docs. 98 at ¶¶ 355–397, 106 at 2–3. Moreover, her Complaint lays out facts that, if true, demonstrate Barham, Covington, and Kidd were personally involved in the alleged deprivations of her constitutional rights. *See* Doc. 1. The Court thus concludes that Plaintiff is only asserting individual-capacity claims against these individual defendants and there are no official-capacity claims to dismiss.

### iii.   *Claims against the Police Department*

The City argues that the City's police department lacks the capacity to be sued separately. Doc. 103 ¶¶ 13–15. Plaintiff does not respond to the City on this issue. *See* Doc. 106. This is likely because Plaintiff does not bring any separate claims against the police department—a conclusion bolstered by examining Plaintiff's allegations. *See* Doc. 98 at ¶¶ 398–411. Nevertheless, because the case caption indicates that the police department is still a party, the Court will address the City's argument.

In determining whether an entity has the capacity to sue and be sued, a federal district court looks to "the law of the state in which the district court is held." *Darby v. Pasadena City Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quoting Fed. R. Civ. P. 17(b)) (internal quotation marks omitted). Under Texas law, a city may designate whether one of its own subdivisions can be sued as an independent entity. *Id.* at 313. Unless the political entity that created the department has taken "explicit steps to grant the servient agency with jural authority," the department lacks the capacity to sue or to be sued. *Id.*

Plaintiff has failed to show that the City of Madisonville ever granted its police

department the capacity to engage in separate litigation. Thus, her suit, "seeks recovery from a legal entity that does not exist." *Id.* at 314. Accordingly, to the extent she is asserting any claims against the police department, those claims must be dismissed.

### iv.  *Claims against the City*

A municipality may not be held vicariously liable for the unconstitutional torts of its employees and is not liable merely for employing a tortfeasor under respondeat superior. *Monell*, 436 U.S. at 694; *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Unconstitutional conduct must be directly attributable to the municipality through official action. *Monell*, 436 U.S. at 690. "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Rather, to establish municipal liability under § 1983, a plaintiff must show that (1) a municipal policymaker promulgated (2) an official policy (3) that was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

### 1.  Policymaker

The City initiates its attack on the sufficiency of Plaintiff's claims against it by arguing that Plaintiff identifies the wrong policymaker in her Second Amended Complaint because the city council, and not the Chief of Police, is the relevant policymaker for the City. Doc. 103 at ¶¶ 18–19. The City continues that even assuming Plaintiff has identified a policymaker for purposes of § 1983 liability, she has failed to allege that the City was deliberately indifferent to the need for a constitutionally adequate police-officer hiring or supervision program. *Id.* ¶¶ 20–26. Nor does she make any factual allegations that the City's policymaker ratified the unconstitutional actions of which Plaintiff complains. *Id.* ¶¶ 26–28.

Plaintiff responds that the case law does not foreclose the possibility that someone other

than the city council can be a municipality's policymaker. Doc. 106 at 7–11. Plaintiff goes on to identify the allegations within her Second Amended Complaint that establish the City delegated its policymaking authority to the Chief of Police for all law enforcement matters and the administration of the department. *Id.* at 9–11. In support, she cites to and attaches relevant excerpts from the City of Madisonville Ordinances, Madisonville City Council Meeting Procedures, Madisonville Police Department Standard Operating Procedures, and Madisonville Police Department Policy Manual. *Id.* (citing Docs. 106-1–4).

In its Reply to Plaintiff's Response, the City raises objections to "Plaintiff's improper attempt to use exhibits presented for consideration of the City's motion to dismiss," and cites *Scanlan v. Texas A&M University*, 343 F.3d 533 (5th Cir. 2003), for the proposition that the Court may not consider these exhibits. Doc. 107 at ¶ 1. The Court will address this issue first.

The City is correct to note that a court must generally limit itself to the contents of the pleadings and attachments thereto when ruling on a 12(b)(6) motion. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). This is so because if a court accepts evidence presented with a motion to dismiss under Rule 12(b)(6), it must then treated as a summary judgment motion. *See* Fed. R. Civ. P. 12(d) ("[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Notwithstanding this general rule, however, the Fifth Circuit has ruled that courts "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon*, 2478 F.3d at 635. "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary

to establish an element of one of the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

The Court finds that Plaintiff's exhibits satisfy this test. Plaintiff's claims depend on the identification of a policymaker. Moreover, although she did not attach the exhibits to her Second Amended Complaint, Plaintiff repeatedly references and cites these documents therein. *See* Doc. 98 at ¶¶ 336–354. The City's objections to Plaintiff's exhibits are overruled.

The Supreme Court has never identified a single body as the source of municipal policymaking authority. *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir. 1999) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). To the contrary, the Court has remarked that "one may expect to find a rich variety of ways in which the power of [local] government is distributed among a host of different officials and official bodies." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124–25 (1988). In eschewing a default rule for identifying a policymaker, the Court has made it clear that "state law . . . will *always* direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id.* at 125 (emphasis added).

Here, Plaintiff alleges that the Chief of Police is the official policymaker for the City and attaches exhibits to her Response that support these allegations. Docs. 98 at ¶ 399; 106-1–4. Accepting these allegations as true, Plaintiff has sufficiently alleged the existence of a policymaker. Dismissal on this basis is denied.

### 2. Policy or Practice

Plaintiff does not allege that the City has an official written policy or policy statement announced by the policymaker that deprived her of her constitutional rights. *See* Doc. 98. Rather, she claims that a practice has been established by the City's deliberate indifference to the need

for adequate hiring and supervision of its police officers and that Covington, Barham, and Kidd's violations of Plaintiff's constitutional rights were ignored or ratified by the City's police chiefs. *Id.* ¶¶ 401–411.

The City contends that Plaintiff's only cited support for her failure-to-supervise claims—her allegation that nearly one-half of the City's police officers were fired or resigned in a six-month period—in fact undercuts her arguments. Doc. 103 at ¶ 21. Likewise, the City argues that the fact it complied with the Texas Commission on Law Enforcement ("TCOLE") guidelines for hiring officers dooms her wrongful-hiring claims. *Id.* ¶ 22. Further, the City points out that there are no allegations that indicate the City's alleged hiring-program inadequacies are linked to the particular injury alleged in this case. *Id.* ¶¶ 23–25. In response to Plaintiff's ratification claims, the City claims that the police chief's initial defense of Covington does not indicate that he ratified Covington's conduct. *Id.* ¶ 26–27. Finally, the City urges that its actions in firing Covington and cooperating with his prosecution illustrate that it did not ratify, but in fact responded appropriately to the situation. *Id.* ¶ 28.

Plaintiff responds that she has sufficiently detailed how the City's police chiefs were aware of but disregarded Covington's actions and the conspiracy to arrest Plaintiff and deny her custody of her children. Doc. 106 at 13–14, 16–19. She goes on to restate a number of the allegations from her Second Amended Complaint. *Id.* at 14–19. She also points to allegations that she claims detail "the long list of crimes and misconduct known to the Chief by officers and supervisors." *Id.* at 14–15. Finally, she argues that her wrongful-hiring claims are sufficient because she outlined how the City failed to adhere to statutory mandated rules for the screening of officers. *Id.* at 15.

To show an official policy, there must be a written policy or policy statement announced

by the policy maker, or "'a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam), *rev'd in part en banc on other grounds*, 739 F.2d 993 (5th Cir. 1984). The plaintiffs must also show that the custom or practice caused the constitutional violation. *See, e.g.*, *Lewis v. Pugh*, 289 F. App'x 767, 775 (5th Cir. 2008) (per curiam) (unpublished) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992)). A claim of a violation of section 1983 pursuant to the latter form of official policy—a persistent, widespread practice of city officials or employers—may encompass allegations that a policymaker failed to act affirmatively, including [by failing to supervise or wrongfully hiring an individual. *Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003).

"Knowledge on the part of a policymaker that a constitutional violation will most likely result from a given official custom or policy is a *sine qua non* of municipal liability under section 1983." *Id.* at 370. Accordingly, for a municipality to be liable under section 1983, "a plaintiff must demonstrate that actual or constructive knowledge of the custom or policy is attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Id.* (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)) (internal quotation marks omitted). "Where an official policy or practice is unconstitutional on its face, it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation will most likely occur." *Id.* (citing *Piotrowski*, 237 F.3d at 579). However, where an alleged policy or custom is facially innocuous, establishing the requisite official knowledge requires that a plaintiff establish that an official policy was "promulgated with deliberate indifference to the 'known or obvious

consequences' that constitutional violations would result." *Id.* (quoting *Piotrowski*, 237 F.3d at 579) (internal quotation marks omitted).

This "knowledge requirement applies with equal force where a section 1983 claim is premised on a failure to train or to act affirmatively." *Id.* "Usually, failure to supervise gives rise to section 1983 liability only in those situations in which there is a history of widespread abuse." *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982). "Then knowledge may be imputed to the supervisory official, and he can be found to have caused the later violation by his failure to prevent it." *Id.* Thus, an official is liable under section 1983 for a failure to supervise only where the plaintiff establishes that: (1) the official failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452–54 & nn.7–8 (5th Cir. 1994)). Similarly, "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Brown*, 520 U.S. at 411.

"Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir. 1998). "To satisfy the deliberate indifference

prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the supervision or hiring is 'obvious and obviously likely to result in a constitutional violation.'" *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (per curiam) (citing *Thompson*, 245 F.3d at 459).

A plaintiff may also satisfy the knowledge requirement and recover under a municipal-ratification theory if a subordinate municipal employee commits a constitutional violation and a policymaker later approves that subordinate's actions. *Praprotnik*, 485 U.S. at 127. Nevertheless, the Fifth Circuit has limited this theory of ratification to "extreme factual situations." *Peterson*, 588 F.3d at 848 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1985)) (internal quotation marks omitted). To succeed under a ratification theory, a plaintiff must show that an investigation found constitutional violations and that the policymaker then knowingly approved of them. *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir. 1986). Alternatively, even if a plaintiff is unable to show knowledge on the policymaker's part, a successful claim can still be brought if the subordinate's conduct is "manifestly indefensible." *Id.* This is only available in extreme circumstances and does not give a plaintiff a remedy every time a policymaker defends his subordinates and those subordinates are later found to have broken the law. *Id.*

Here, Plaintiff fails to sufficiently allege facts that satisfy the requirement of § 1983 liability that a policymaker have knowledge of a policy. The Court does not believe that Plaintiff's allegations concerning the alleged misdeeds of a number of other individuals on the police force suffice to show a pattern that demonstrates deliberate indifference. There must be more than a list of instances of officer misconduct in order to establish a pattern. *Peterson*, 588 F.3d at 851. The number of incidents requires the context provided by, for example, the department's size or the number of its arrests. *Id.* at 852. "The incidents must also be sufficiently

similar to warrant an inference of a pattern." *Alfaro v. City of Houston*, CIV.A. H-11-1541, 2013 WL 3457060, at *13 (S.D. Tex. July 9, 2013). While Plaintiff provides the size of the City of Madisonville and its police force, she goes no further. She then launches into a laundry list of alleged wrongdoings that are in no way similar to the constitutional deprivation she allegedly suffered. *See* Doc. 98 at ¶¶ 290–335.

Plaintiff's allegations regarding the conduct of other officers are largely conclusory and based on hearsay. Nevertheless, taken at face value, they still do not show ratification of a municipal policy of inadequate supervision or hiring. Although Plaintiff may not have agreed with the police department's handling of the alleged cases of officer misconduct she cites in her Second Amended Complaint, her allegations clearly indicate that the department conducted investigations or inquiries into a number of these incidents. *See id.* Likewise, her allegations that the police chief initially defended Covington are insufficient to show ratification. "[A] policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848 (citing *Coon,* 780 F.2d at 1161–62).

### 3.  Moving Force

The parties do not directly address the sufficiency of Plaintiff's allegations with regard to the third element of municipal liability under § 1983. *See* Docs. 103, 106. Nevertheless, for municipal liability to attach under § 1983, "[i]n addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. The threshold of proof here is high, requiring that the policy be the "moving force" behind the violation. *Id.* (citing *Monell*, 436 U.S. at 694; *Canton*, 489 U.S. at 389).

Where, as here, there are no allegations indicating that additional investigation into or

supervision of Covington—or other officers—would have revealed specific information about a history of or clear propensity for misusing their offices to frame individuals or fabricate evidence, there can be no inference of a causal link between the City's hiring and supervision process and Covington's misdeeds. *See e.g.*, *Brown v. Bryan Cnty.*, 219 F.3d 450, 461 (5th Cir. 2000) ("the failure to train or to provide supervision must be 'the moving force' that had a specific causal connection to the constitutional injury"); *Brown*, 520 U.S. at 411 (holding that the link between an officer's background and his subsequent constitutional violations must be "plainly obvious" and concluding that officer in question's record of misdemeanors did not suffice to establish the necessary causal link to excessive force claims); *Alfaro*, 2013 WL 3457060, at *15 (concluding that city's background check must have revealed specific information about officer's propensity for misusing his position to commit rape to hold the city liable for wrongful hiring); *Kincheloe v. Caudle*, A-09-CA-010 LY, 2010 WL 1170604, at *5 (W.D. Tex. Mar. 22, 2010) (stating that scrutiny of officer's background must have revealed that the plainly obvious consequence of hiring him would be to violate Plaintiff's rights by using excessive force). Plaintiff's allegations regarding Covington's termination for drug-related issues and other officers' misdeeds have absolutely no relation to Plaintiff's alleged constitutional deprivations. Accordingly, her allegations are woefully insufficient to establish the necessary causal link to impose municipal liability.

Plaintiff's allegations against the City cannot support the second or third element of a claim for municipal liability. Accordingly, Plaintiff's Second Amended Complaint fails to state a claim for relief against the City. Plaintiff's claims against the City are, therefore, dismissed.

### IV. Plaintiff's Motion to Strike and Motion for Leave to File a Sur-Reply

In her Motion to Strike and for Leave to File Sur-Reply, Plaintiff argues that the City

improperly made new arguments in its Reply to Plaintiff's Response. Doc. 108. She urges this Court to strike the City's Reply because it newly asserts (1) objections to Plaintiff's claims against Barham and Covington, and (2) argues that all Fourteenth Amendment claims are barred even though its Second Motion to Dismiss was only based on Fourteenth Amendment claims for unlawful arrest or detention. Doc. 108 ¶¶ 2–4. Alternatively, she requests that she be afforded an opportunity to respond. *Id.* ¶ 5.

"In principle, the Court should not consider arguments raised for the first time in a Reply brief." *Blanchard & Co., Inc. v. Heritage Capital Corp.*, CIV.A.3:97-CV-0690-H, 1997 WL 757909, at *1 (N.D. Tex. Dec. 1, 1997) (citation omitted). However, in this case, Plaintiff misreads the City's Reply; no new arguments are advanced. *Compare* Doc. 103 ¶¶ 9–12, *with* Doc. 107 ¶¶ 2–3. The City's Reply simply reiterates that the official capacity claims against Covington and Barham and the earlier Fourteenth Amendment claim for unlawful arrest were dismissed by the Court and urges this Court to bar Plaintiff from reasserting those claims. *See* Doc. 107 ¶¶ 2–3. It neither mentions individual-capacity claims nor challenges Plaintiff's Fourteenth Amendment claims for fabrication of evidence and violation of the right to family integrity. Accordingly, Plaintiff's request to strike the City's Reply is denied. Nevertheless, because full and complete briefing is useful to the adjudication of this case and Plaintiff's motion is unopposed, the Court will grant her leave to file her Sur-Reply.

## V. Amendment

Plaintiff requests leave to amend if her Second Amended Complaint succumbs to the City's Second Motion to Dismiss. Doc. 106 at 20.

Federal Rule of Civil Procedure 15(a) states that "[t]he court should freely give leave [to amend] when justice so requires." The Fifth Circuit has held that Rule 15(a) "evinces a bias in

favor of granting leave to amend." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981). "However, it is by no means automatic." *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. Unit A July 1981) (citing *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979) (per curiam)). "A decision to grant leave is within the discretion of the court, although if the court lacks a substantial reason to deny leave, its discretion is not broad enough to permit denial." *Louisiana v. Litton Mortg. Co.*, 50 F.3d 1298, 1302–03 (5th Cir. 1995) (per curiam) (citation and internal quotation marks omitted). In exercising its discretion, "the district court may consider such factors as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Plaintiff has already been afforded an opportunity to amend her claims against the City and has again failed to state claims capable of surviving the City's motions to dismiss. *See* Doc. 91. As a result, the Court concludes that granting her leave to amend yet again would be futile. Accordingly, the Court declines to grant Plaintiff leave to amend and dismisses all claims against the City with prejudice.

## VI. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Reconsideration, Doc. 96, is **MOOT**. It is further

**ORDERED** that Plaintiff's Motion to Strike and for Leave to File Sur-Reply, Doc. 108, is **GRANTED IN PART AND DENIED IN PART**. Finally, it is

**ORDERED** that the City's Motion to Dismiss, Doc. 103, is **GRANTED** and all claims against the City and its police department are hereby **DISMISSED WITH PREJUDICE**.

The Clerk of the Court is further

**ORDERED** to remove the City of Madisonville, Madisonville Police Department, and any individual defendants in their "official-capacities" from the caption of this case.

SIGNED at Houston, Texas, this 14th day of February, 2017.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE